UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DEVONTEA M. WALTON,

        Petitioner,

v.

                                    Case No. 20-cv-677-pp

UNITED STATES OF AMERICA,

        Respondent.

---

**ORDER DENYING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE UNDER 28 U.S.C. §2255 AND DISMISSING CASE WITH PREJUDICE**

---

On April 30, 2020, the petitioner filed a motion to vacate, set aside or correct his sentence under 28 U.S.C. §2255, challenging his conviction in <u>United States v. Devontea Walton</u>, Case No. 17-cr-108 (E.D. Wis.). Dkt. No. 1. The motion asserts two grounds for relief: (1) the petitioner's "sentence is in violation of his Fifth, Sixth and Fourteenth Amendment Rights," and (2) "the enhancement was erroneously applied to his offense level." <u>Id.</u> at 4, 5. Because the petitioner plainly is not entitled to relief, the court denies the §2255 motion and dismisses the case.

**I.    Background**

    A.    <u>Underlying Case</u>

        1.    *Indictment*

On June 13, 2017, the grand jury returned an indictment against the petitioner, Javon Walton and Monroe Walton III. <u>United States v. Devontea</u>

Walton, Case No. 17-cr-108 (E.D. Wis.), Dkt. No. 1. Count One charged all three with conspiring to (1) commit Hobbs Act robberies in violation of 18 U.S.C. §1951, (2) take a motor vehicle by force, violence and intimidation with the intent to cause death and serious bodily harm in violation of 18 U.S.C. §2119(1), and (3) brandish, carry and use a firearm during and in relation to and to possess a firearm in furtherance of crimes of violence in violation of 18 U.S.C. §924(c). Id. at 1-2. Count Four charged the petitioner and Monroe Walton III with the May 5, 2017 Hobbs Act robbery of a US Cellular store in violation of 18 U.S.C. §§1951(a) and 2. Id. at 5. Count Five charged the petitioner and Monroe Walton III with knowingly using, carrying and brandishing a firearm during and in relation to that crime of violence in violation of 18 U.S.C. §§924(c)(1)(A)(ii) and 2. Id. at 6. Count Six charged the petitioner and Monroe Walton III with taking a motor vehicle by force, violence and intimidation with the intent to cause death and serious bodily harm in violation of 18 U.S.C. §§2119(1) and 2. Id. at 7. Count Seven charged the petitioner and Monroe Walton III with knowingly using, carrying and brandishing a firearm during and in relation to *that* crime of violence in violation of 18 U.S.C. §§924(c)(1)(A)(ii) and 2. Id. at 8.

    2.    *Plea agreement*

On July 10, 2018, the petitioner (represented by Attorney Victor Plantinga) signed a plea agreement. Dkt. No. 62 at 14. The plea agreement was filed on July 12, 2018. Dkt. no. 62. The agreement stated that the petitioner was pleading to Counts Four and Five of the indictment. Id. at ¶4. In the

agreement, the petitioner acknowledged that he had read and fully understood the charges in the indictment, "the nature and elements of the crimes with which he ha[d] been charged" and that his attorney fully explained "the terms and conditions of the plea agreement." Id. at ¶3. The petitioner acknowledged, understood and agreed that he was guilty of the offenses in Counts Four and Five. Id. at ¶5. He admitted that facts attached to the plea agreement established his guilt beyond a reasonable doubt and were true and correct. Id. He stated that he understood and agreed that the maximum term of imprisonment for Count Four was twenty years in prison, a $250,000 fine, three years of supervised release and an unspecified amount of restitution; he understood and agreed that Count Five carried a "[m]andatory minimum of seven years and up to life in prison" consecutive to any other sentence, a maximum of five years of supervised release and a $250,000 fine. Id. at ¶6. The petitioner acknowledged, understood and agreed that he had "discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney." Id. at ¶7.

The agreement also laid out the elements of the charges. Id. at ¶¶9-10. It said that the parties understood and agreed that in order to sustain the Hobbs Act robbery charge in Count Four, the government would have been required to prove beyond a reasonable doubt that (1) the petitioner "knowingly obtained property from or in the presence of a person," (2) the petitioner "did so by means of robbery," (3) the petitioner "believed that the person parted with the property because of the robbery," and (4) "the robbery affected interstate

3

commerce." Id. at ¶9. The parties confirmed that they understood and agreed that in order to sustain the charge of brandishing a firearm during a crime of violence in Count Five, the government would have been required to prove that (1) the petitioner committed the Hobbs Act robbery alleged in Count Four and (2) the petitioner "knowingly used and brandished a firearm during that crime." Id. at ¶10.

The petitioner acknowledged and agreed "that his attorney . . . discussed the applicable sentencing guidelines provisions with [the petitioner] to [the petitioner's] satisfaction." Id. at ¶13. He acknowledged and understood "that the sentencing guidelines recommendations contained in this agreement [did] not create any right to be sentenced within any particular sentence range, and that the court [might] impose a reasonable sentence above or below the guidelines range. Id. at ¶15. The parties acknowledged, understood and agreed that the sentencing court could "consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct [was] not the subject of the offense to which [the petitioner] [was] pleading guilty." Id. at ¶16. "The parties agree[d] to recommend to the sentencing court that the applicable base offense level for the offense charged in Count Four" was 20. Id. at ¶17. They agreed that the government would recommend "a two-level increase for [the petitioner's] vehicular flight from law enforcement . . . , which created a substantial risk of death or serious bodily harm to another person." Id. at ¶18. The government agreed to recommend a two-level decrease under U.S.S.G. §3E1.1(a) for the petitioner's timely acceptance of responsibility and agreed

4

that if the court determined at the time of sentencing that the defendant was entitled to that two-level reduction, the government would make a motion under U.S.S.G. §3E1.1(b) for an additional one-level increase because the defendant's timely agreement to plead guilty. Id. at ¶19. The parties acknowledged, understood and agreed that "[t]he sentencing court [would] make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties" set forth in the agreement. Id. at ¶23. The petitioner acknowledged, understood and agreed that under the terms of the agreement, he could not "move to withdraw the guilty plea solely as a result of the sentence imposed by the court." Id. at ¶24.

The agreement also contained the petitioner's waiver of rights. Based on the agreement, the petitioner "knowingly and voluntarily waive[d] his right to appeal his sentence in this case and further waive[d] his right to challenge his conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. §2255." Id. at ¶33. The petitioner's waiver included "the waiver of any claim that (1) the statutes or Sentencing Guidelines under which [the petitioner] is convicted or sentenced are unconstitutional, and (2) the conduct to which the [the petitioner] has admitted does not fall within the scope of the statutes or Sentencing Guidelines." Id. "This waiver [did] not extend to an appeal or post-conviction motion based on (1) any punishment in excess of the statutory maximum, (2) the sentencing court's reliance on any constitutionally impermissible factor, such as race,

5

religion, or sex, (3) ineffective assistance of counsel in connection with the negotiation of the plea agreement or sentencing, or (4) a claim that the plea agreement was entered involuntarily." Id.

The agreement provided that if the petitioner violated any term of the agreement at any time, the agreement would "become null and void at the discretion of the government." Id. at ¶41. If the agreement "[was] revoked or if [the petitioner's] conviction ultimately [was] overturned, then the government retain[ed] the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of [the] agreement." Id. Finally, the petitioner acknowledged, understood and agreed that he was "plead[ing] guilty freely and voluntarily because he [was] in fact guilty," and that "no threats, promises, representations, or other inducements ha[d] been made, nor agreements reached, other than those set forth in [the] agreement, to induce [the petitioner] to plead guilty." Id. at ¶42.

      3.    *Change-of-plea hearing*

On September 5, 2018, the court held a change-of-plea hearing. Dkt. No. 68. The petitioner appeared in person with Attorney Plantinga. Id. at 1. The court's minutes reflect that during the hour-long hearing, the court placed the petitioner under oath, reviewed the plea agreement with him, questioned him, "recounted that Count Four involved a maximum prison term of twenty years, a maximum fine of $250,000, and a maximum of three years of supervised release," recounted that "Count Five carried a mandatory minimum prison term of seven years and a maximum of life, to run consecutively to any other

6

sentence" and mentioned that each charge carried a "mandatory special assessment of $100," for a total assessment of $200. Id. "[T]he court found that [the petitioner] understood his trial rights, the penalties associated with the charge[s], the possible civil ramifications of a conviction, and the uncertainty of his ultimate sentence." Id. "The court also found that [the petitioner] entered the plea knowingly and voluntarily, without threats or promises." Id. "The court accepted [the petitioner's] plea of guilty, and found [the petitioner] guilty of the offenses charged in Counts Four and Five of the indictment." Id.

    4.    *Sentencing hearing*

On January 3, 2019, the court conducted the sentencing hearing. Dkt. No. 94. The petitioner appeared in person with Attorney Plantinga. Id. at 1. Attorney Plantinga confirmed that he and the petitioner had reviewed the presentence investigation report; the petitioner also had filed his own sentencing memorandum and letters of support. Id. The court explained that the sentencing guidelines in the presentence report were advisory, but that the law required the court to begin its sentencing analysis with those advisory guidelines and consider their application to the factors in 18 U.S.C. §3553. Id.

The court calculated a base offense level of 20 under U.S.S.G. §2B3.1(a), a 2-level enhancement under U.S.S.G. §3C1.2 for recklessly creating a substantial risk of death or serious injury to another person in the course of fleeing law enforcement, a 2-level decrease under U.S.S.G. §3E1.1(a) for acceptance of responsibility and a 1-level decrease under U.S.S.G. §3E1.1(b) for the timeliness of that acceptance, for an adjusted offense level of 19; the

7

defendant did not object to this calculation. Id. The court calculated the defendant's criminal history category as III; again, the defendant did not object. Id. Adjusted offense level 19 in criminal history category III resulted in an advisory sentencing range of thirty-seven to forty-six months on Count Four. Id. at 1-2.

Count Five—the §924(c) gun charge—carried a mandatory minimum penalty of eighty-four months consecutive to any other sentence the court might impose. Id. at 2. So the court added eight-four months to the low and high ends of the advisory range for Count Four, which resulted in a total advisory sentencing range—"including the consecutive mandatory minimum sentence"—of one hundred twenty-one to one hundred thirty months. Id. at 1-2. Neither party objected to the court's calculation, and each gave their respective sentencing recommendations: the government recommended that the court impose a sentence of one hundred twenty months, while the petitioner argued for a sentence of eighty-four months and one day. Id. at 2.

The court concluded that a sentence of one hundred fourteen months of incarceration with credit for time served, followed by five years of supervised release, was sufficient but not more than necessary to address the §3553 factors. Id. The court also ordered the petitioner to pay a special assessment of $200, agreed to recommend that the Bureau of Prisons place the petitioner in a facility as close as possible to the Eastern District of Wisconsin and dismissed the remaining counts of the indictment against the petitioner. Id.

The court entered judgment on January 8, 2019. Dkt. No. 95. The court's judgment reflected the sentence: thirty months on Count Four (the Hobbs Act robbery count) and eighty-four months on Count Five (the §924(c) count) to run consecutively to the sentence imposed on Count Four, for a total sentence of one hundred fourteen months. Id. at 1-2. The defendant did not appeal.

    B.    <u>Petitioner's Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. §2255 (Dkt. No. 1)</u>

Sixteen months later, the petitioner filed this motion to vacate, set aside or correct his sentence under 28 U.S.C. §2255. <u>Walton v. United States</u>, Case No. 20-cv-677 (E.D. Wis.), Dkt. No. 1. The motion asserts that the sentence violates the petitioner's rights under the Fifth, Sixth and Fourteenth Amendments. Id. at 4. The petitioner argues that "[i]n a controlling Supreme Court case the Supreme Court found the residual clause, §924(c)(3)(B), to be unconstitutionally void for vagueness." Id. He concludes that his case "should be remanded for resentencing in light of United States v Davis (2019)." Id. In the section of the §2255 form petition asking whether he raised this issue on direct appeal, the petitioner marked "No," and stated that "[d]irect appeal typically is not the proper vehicle for an ineffective assistance of counsel claim." Id. Second, the petitioner argues that the court erroneously enhanced his sentence under U.S.S.G. §2D1.1(b)(1). Id. at 5.

**II.    Analysis**

    A.    <u>Standard</u>

In a §2255 proceeding, the court must first review—or "screen"—the motion. Rule 4 of the Rules Governing Section 2255 Proceedings provides that

[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

A petitioner seeking relief under §2255 must allege either that the sentence violated the Constitution or laws of the United States, that the court was without jurisdiction, that the sentence exceeded the maximum authorized by law or that the sentence is otherwise subject to collateral attack. 28 U.S.C. §2255(a). At the screening stage, the court considers whether the petitioner has raised claims that can be adjudicated in a §2255 proceeding, whether the petitioner has exhausted his claims and whether he filed the motion within the limitations period.

B. <u>United States v. Davis</u>

The petitioner says that his case "should be remanded for resentencing in light of United States v Davis (2019)." Dkt. No. 1 at 4.

1. *Timeliness*

28 U.S.C. §2255 imposes a one-year limitation period for filing motions to vacate, set aside or correct federal sentences. The one-year period begins on the latest of—

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or law of the United States is removed, if the movant was prevented from making a motion by such governmental action;

10

> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2255(f).

The petitioner filed his §2255 motion on April 30, 2020. Dkt. No. 1. The court entered judgement of conviction in his underlying criminal case on January 8, 2019. Id. at 1. The petitioner did not file his §2255 motion within one year of his judgment becoming final under §2255(f)(1). He does not assert newly discovered evidence under §2255(f)(4), or that an impediment prevented him from filing his motion under §2255(f)(2). That leaves §2255(f)(3), "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." The United States Supreme Court decided United States v. Davis, __ U.S. __, 139 S. Ct. 2319 (2019) on June 24, 2019. At least one district court in the Seventh Circuit has concluded that Davis recognized a new right that applies retroactively on collateral review, Carter v. United States, No. 16-cv-02184, 2019 WL 4126074, at *5 (C.D. Ill. Aug. 29, 2019), as has the Eleventh Circuit Court of Appeals, In re Hammoud, 931 F.3d 1032, 1037-1039 (11th Cir. 2019). The court will assume for the purposes of this decision only that Davis did recognize a new right and that it applies retroactively on collateral review. That means that the

11

petitioner has timely raised his claim, because he raised it within a year of the date the Supreme Court decided Davis.

        2.     *Procedural Default*

While a claim must be timely, it must also be cognizable. For a claim to be cognizable under §2255, the petitioner must have raised the claim on direct appeal; "[a]ny claim that could have been raised originally in the trial court and then on direct appeal that is raised for the first time on collateral review is procedurally defaulted." Delatorre v. United States, 847 F.3d 837, 843 (7th Cir. 2017) (citing Hale v. United States, 710 F.3d 711, 713-14 (7th Cir. 2013)). "Procedurally defaulted constitutional claims are not considered on collateral review unless the petitioner shows either (1) actual innocence or (2) cause and prejudice." Delatorre, 847 F.3d at 843 (citing Bousley v. United States, 523 U.S. 614, 622 (1998)).

If the petitioner raised the claim on direct appeal, the "law of the case" doctrine dictates that a Circuit Court of Appeals' decision becomes binding when that defendant later raises the same claim through a §2255 motion to vacate, set aside or correct a sentence. Fuller v. United States, 398 F.3d 644, 648 (7th Cir. 2005) (citing United States v. Mazak, 789 F.2d 580, 581 (7th Cir. 1986)).

The petitioner argues that his sentence and conviction violate Davis. Dkt. No. 1 at 4. Id. The petitioner raises this claim for the first time in the §2255 motion.

> A claim cannot be raised for the first time in a § 2255 motion if it could have been raised at trial or on direct appeal. *Sandoval v.*

> *United States*, 574 F.3d 847, 850 (7th Cir.2009). Likewise, a § 2255 appellant cannot raise for the first time on appeal a claim not presented to the district court in the § 2255 proceedings below. *Pierce v. United States*, 976 F.2d 369, 371 (7th Cir.1992). A federal prisoner cannot bring defaulted claims on collateral attack unless he shows both cause and prejudice for the default. *Hale v. United States*, 710 F.3d 711, 713 (7th Cir.2013); *Gant v. United States*, 627 F.3d 677, 683 (7th Cir.2010). Absent a showing of both cause and prejudice, procedural default will only be excused if the prisoner can demonstrate that he is "actually innocent" of the crimes of which he was convicted. *Torzala v. United States*, 545 F.3d 517, 522 (7th Cir.2008).

McCoy v. United States, 815 F.3d 292, 295 (7th Cir. 2016).

Normally, the doctrine of procedural default would bar this claim because the petitioner did not raise it before this court or the Seventh Circuit. But the petitioner may overcome procedural default if he can show that he had cause for his failure to raise the issue earlier and actual prejudice. Cross v. United States, 892 F.3d 288, 294 (7th Cir. 2018) (citing Bousley, 523 U.S. at 622). The petitioner can show cause for his failure to raise the Davis argument before the trial court. "A change in the law may constitute cause for procedural default if it creates 'a claim that is "so novel that its legal basis is not reasonably available to [trial or appellate] counsel."'" Id. (citing Bousley, 523 U.S. at 622). The Supreme Court decided Davis on June 24, 2019—ten months after the court accepted the petitioner's guilty plea and six months after the court imposed sentence. The Davis decision was not reasonably available to the petitioner prior to sentencing; he has stated cause for his default.

But the petitioner cannot show prejudice. Section 924(c) "authorizes heightened criminal penalties for using or carrying a firearm 'during and in

13

relation to,' or possessing a firearm 'in furtherance of' any federal 'crime of violence or drug trafficking crime.'" Davis, 139 S. Ct. at 2324. The statute defines a "crime of violence" in "two subparts—the first known as the elements clause, and the second [known as] the residual clause." Id. Section 924(c)(3)(A) is the "elements" clause; it defines a "crime of violence" as "an offense that is a felony" and "has as an element the use, or threatened use of physical force against the person or property of another." Section 924(c)(3)(B) is the "residual" clause, and defines a "crime of violence" as "an offense that is a felony" and "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

In Davis the Supreme Court held that the "residual" clause—§924(c)(3)(B)—was unconstitutionally vague, because it required a judge to imagine the "ordinary" circumstances of whatever the underlying crime may have been and then "guess" whether that crime would, "by its nature," involve a substantial risk that physical force against the person or property of another might be used in the course of committing it. See Davis, 139 S. Ct. at 2325-26. The petitioner argues that "if a Hobbs Act conspiracy, 18 U.S.C. §1951 (I(3), is a 'crime of violence' under the residual clause of §924(c)(3)(B), and not under the elements clause of §924(c)(3)(A), it is no longer a valid predicate to a conviction under 18 U.S.C. §924(c)(1)(A)(ii), to which Petitioner pleaded guilty and was sentenced accordingly; which causes Petitioner's sentence to be in violation of his Fifth, Sixth and Fourteenth Amendment rights." Dkt. No. 1 at 4.

14

The petitioner pled guilty to Counts Four and Five of the indictment. Count Four charged the petitioner with Hobbs Act robbery, not conspiracy to commit Hobbs Act robbery. Count Five charged the petitioner with knowingly using, carrying and brandishing a firearm in connection with the Hobbs Act robbery underlying Count Four. And, several times since the Supreme Court decided Davis, the Seventh Circuit Court of Appeals has rejected the argument that a Hobbs Act robbery is not a crime of violence under §924(c)(3)A). See United States v. Brown, 973 F.3d 667, 697 (7th Cir. 2020); Oliver v. United States, 951 F.3d 841, 847 (7th Cir. 2020); Velez v. United States, 793 F. App'x 453, 454 (7th Cir. 2020); United States v. Ingram, 947 F.3d 1021, 1025-26 (7th Cir. 2020); United States v. Fisher, 943 F.3d 809, 815 (7th Cir. 2019); United States v. Fox, 783 F. App'x 630, 632 (7th Cir. 2019) ("[W]e have confirmed that a Hobbs Act robbery is a crime of violence under the still-valid 'elements clause' of §924(c)."); United States v. Rogers, 781 F. App'x 559, 560 (7th Cir. 2019); Haynes v. United States, 936 F.3d 683, 690 (7th Cir. 2019) ("Hobbs Act robbery is a categorical crime of violence under § 924(c) because it has as an element the actual, attempted, or threatened use of force.").

The Seventh Circuit has had opportunities since the Supreme Court's decision in Davis to change its position on whether Hobbs Act robbery constitutes a crime of violence under the elements clause of Section 924(c)(3)(A). It has not done so. Seventh Circuit decisions bind this court. The petitioner's conviction for Hobbs Act robbery is a crime of violence under the

15

elements clause, Section 924(c)(3)(A). Davis does not entitle the petitioner to relief.

        3.    *Waiver*

Even if the petitioner timely filed his §2255 motion and avoided procedural default, the petitioner's express waivers of appellate and §2255 relief rights in his plea agreement bar relief. The Seventh Circuit has held that a waiver of §2255 relief in a plea agreement is enforceable, and that a court should treat it no differently than the waiver of a direct appeal. See Jones v. United States, 167 F.3d 1142, 1145 (7th Cir. 1999); see also United States v. Perillo, 897 F.3d 878, 882 (7th Cir. 2018) ("A 'voluntary and knowing waiver of an appeal is valid and must be enforced.'") (quoting United States v. Sakellarion, 649 F.3d 634, 638 (7th Cir. 2011)). A petitioner who waives his right to appeal may raise only two claims in a §2255 motion: (1) that the petitioner received ineffective assistance of counsel in negotiating the waiver; or (2) that the petitioner did not knowingly and voluntarily enter into the agreement. Jones, 167 F.3d at 1145. Representations made to a court during a plea colloquy are presumptively true. Hurlow v. United States, 726 F.3d 958, 968 (7th Cir. 2013) (quoting United States v. Chavers, 515 F.3d 722, 724 (7th Cir. 2008)).

The plea agreement and the plea colloquy demonstrate that the petitioner acknowledged that he was guilty of both the Hobbs Act robbery and knowingly using, carrying and brandishing a firearm during that robbery. Because the court presided over both the change-of-plea hearing and the sentencing

hearing, the court is satisfied that the petitioner entered into the agreement voluntarily, knowingly and intelligently. The petitioner now claims that his sentence violates Davis. That is not a basis for relief given his admissions in the plea agreement and at the plea colloquy and his waiver of his appellate rights. The petitioner's express plea waiver bars this claim, even though the waiver predated Davis. Oliver v. United States, 951 F.3d 841, 845-46 (7th Cir. 2020). Because the petitioner has not alleged that his attorney was ineffective in negotiating the appellate waiver and because he cannot demonstrate that his plea was not knowing or voluntary, the court will not allow the petitioner to proceed on his Davis claim.

The court notes that in the section of the form asking whether the petitioner raised this issue on direct appeal, he marked "No," stating that "[d]irect appeal typically is not the proper vehicle for an ineffective assistance of counsel claim." Dkt. No. 1 at 4. To the extent that the petitioner means to assert that his attorney performed ineffectively for failing to raise the petitioner's Davis argument, the court will deny relief. As the court has just discussed, the petitioner's plea agreement bars review and his Davis claim is otherwise meritless. An attorney cannot be ineffective for failing to raise a meritless argument. Washington v. Boughton, 884 F.3d 692, 701 (7th Cir. 2018). And because the Supreme Court decided Davis after the petitioner pled guilty and after he was sentenced, his attorney could not have performed ineffectively for failing to raise a claim based on a case that a court had not yet decided.

C.   Enhancement

The petitioner argues that the court erroneously enhanced his sentence under U.S.S.G. §2D1.1(b)(1). Dkt. No. 1 at 5. He states that comments to the sentencing guidelines provide that "[t]he enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." Id. (citing United States Sentencing Commission, Guidelines Manual, §2D1.1 n.11 (Nov. 2018)). Citing "Stallings, 463 F.3d at 1330," the petitioner contends that "[t]he government must show that the firearm had 'some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence.'" Id.

Again, the petitioner waived his right to bring any claim that the court applied the guidelines incorrectly. A claim based on the evidentiary burdens of a sentencing enhancement does not implicate any of the limited exceptions to the petitioner's waiver of rights within his plea agreement.

Even if the petitioner had not waived his right to appeal, the petitioner's argument would have no merit. The court did not enhance the petitioner's sentence under §2D1.1(b)(1). Section 2D1.1 is the section of the sentencing guidelines that applies to *drug* crimes. Section 2D1.1(b)(1) requires a court to enhance by 2 levels the sentence of someone convicted of a *drug* offense if that person possessed a dangerous weapon. United States Sentencing Commission, Guidelines Manual, §2D1.1 (Nov. 2018). The defendant was not charged with, or convicted of, a drug offense and the court did not use §2D1.1 in calculating

18

his sentence. Rather, the defendant was convicted of a *firearm* offense—using, carrying and brandishing a firearm during a Hobbs Act robbery. He received a seven-year mandatory minimum sentence for that crime, which the law required to be imposed consecutively to the sentence the court imposed for the Hobbs Act robbery.

The court will deny the §2255 motion.

### III. Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2255 Proceedings, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or for that matter, agree that) the §2255 motion should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (internal quotations omitted). The court declines to issue a certificate of appealability, because reasonable jurists could not debate that the petitioner's motion to vacate, set aside or correct his sentence plainly does not entitle him to relief under 28 U.S.C. §2255(a).

### IV. Conclusion

The court **DENIES** the petitioner's motion to vacate, set aside or correct sentence under 28 U.S.C. §2255. Dkt. No. 1.

The court **ORDERS** that this case is **DISMISSED with prejudice**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 20th day of May, 2021.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**